UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN SHI *and* KEVIN WHITE,

                              Plaintiffs,

                                                                    **REPORT AND**
                    -against-                                        **RECOMMENDATION**
                                                                    21 CV 1361 (ARR) (CLP)
DON LE,

                              Defendant.
--------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

On March 15, 2021, plaintiffs John Shi ("Shi") and Kevin White ("White") commenced this diversity action against defendant Don Le ("Le"), seeking injunctive relief and equitable or compensatory damages based on defendant's failure to return plaintiffs' 100 ether ("ETH") tokens. (Compl.[1] ¶ 1). Plaintiffs also request attorney's fees and costs. (Id. at 9).

Currently pending before this Court is plaintiff's motion for default judgment. For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion be denied.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff Shi resides in Brooklyn, New York, while plaintiff White resides in San Francisco, California. (Id. ¶ 3). Defendant Le is "believed to reside in Springfield, Virginia," and is alleged to be the "Founder and General Partner of ChainRock, a research and investment firm focused on blockchain technology and cryptocurrencies that has since ceased all operations." (Id. ¶ 2). According to the Complaint, plaintiffs contacted defendant on March 25, 2018 in order to purchase a cryptocurrency called Kadena ("KDA") that would be issued by a third-party, Kadena LLC ("Kadena"). (Id. ¶¶ 1, 6). The third party entity, Kadena, is allegedly

---

[1] Citations to "Compl." refer to plaintiff's complaint, filed Mar. 15, 2021, ECF No. 1.

located in Brooklyn, New York.  (Id. ¶ 1).  Plaintiffs were to pay for the KDA using their ETH tokens and defendant was to serve as an intermediary between Kadena and plaintiffs.  (Id. ¶¶ 9-10).  Although defendant worked for ChainRock, defendant informed plaintiffs that he would be serving as an intermediary in his personal capacity, and not as a representative of ChainRock. (Id. ¶ 9).  All communications between plaintiffs and defendant were conducted by plaintiff White, although plaintiffs allege that defendant was aware that the transaction was to be made on behalf of both plaintiffs.  (Id. ¶ 6).

After several conversations regarding the number of KDA that plaintiffs would purchase, the number of ETH tokens that would be transferred, and the logistics of transferring the ETH tokens, plaintiffs transferred 100 ETH tokens, representing 50 tokens owned by each plaintiff, to an "address for an Ethereum wallet"[2] provided by defendant on March 30, 2018.  (Id. ¶¶ 7-10). After confirming that he received the tokens, defendant ceased communicating with plaintiffs for several days.  (Id. ¶¶ 11-12).  Plaintiffs were able to contact defendant on April 3, 2018; however, by December 2018, defendant "had stopped communicating with Plaintiffs altogether." (Id. ¶ 12).  On July 3, 2019, plaintiffs contacted another partner at ChainRock, Mr. Jeremy Seow, who told plaintiffs that he was also unable to contact defendant and "expressed his frustration" because he apparently had also made an investment in KDA by transferring ETH tokens to defendant.  (Id. ¶ 13).

 In October 2019, plaintiffs contacted Kadena to see if anyone there had been in communication with defendant.  (Id. ¶ 14).  Kadena's CEO stated that, while Kadena had discussed a transaction with defendant on behalf of ChainRock, defendant later became

---

[2] Plaintiffs explain that a "wallet" is a software that holds "a user's cryptographic keys, which function like a password to authenticate the user and allow the user to transact in cryptocurrencies." (Compl. ¶ 3 n.3).

"completely unresponsive." (Id.)  In November 2019, Kadena's CEO informed Mr. Seow that defendant had contacted Kadena and defendant was aware that plaintiffs wanted him to contact them. (Id. ¶ 15).  Plaintiffs were later able to contact defendant on November 11, 2019, who stated he was willing to get on a phone call with plaintiffs; however, according to plaintiffs, the phone call never took place. (Id. ¶ 16).

According to plaintiffs, they do not know if defendant "ever purchased any KDA tokens using Plaintiffs' funds." (Id. ¶ 18).  On August 26, 2020, plaintiffs reached out to defendant "to demand that Defendant return Plaintiffs' ETH tokens," and, while they were able to make contact with him, defendant later "disappeared." (Id. ¶ 20).  Plaintiffs allege that between when they transferred their ETH tokens and the filing of the Complaint, the price of each token has risen from $416.29 to $1,779.50 per token. (Id. ¶ 19).

Following the filing of the Complaint on March 15, 2021, the Summons and Complaint were served on Le through personal service upon his "Father and Co-Resident" at 6101 Hibbling Avenue in Springfield, Virginia 22150, followed by service by first class mail to the same address. (ECF No. 5).  On April 12, 2021, when defendant failed to answer or otherwise respond to plaintiffs' Complaint, the Clerk of Court entered a Certificate of Default against defendant. (ECF No. 7).  Thereafter, on April 13, 2021, plaintiffs filed a motion for default judgment. (See Mot.[3]).  The default judgment motion was served on defendant by "mailing it to Defendant's last known address, 6101 Hibbing Avenue" in Springfield, Virginia 22150. (See ECF No. 8-2).  The motion for default judgment was referred to the undersigned by the Honorable United States District Judge Allyne R. Ross for a Report and Recommendation on April 14, 2021. (See Judge Ross's Electronic Order, filed Apr. 14, 2021).

---

[3] Citations to "Mot." refer to plaintiff's First Motion for Default Judgment, filed Apr. 13, 2021, ECF No. 8.

On November 5, 2021, this Court Ordered plaintiffs to supplement their filings with the paperwork required by Local Rule 7.1, including a Memorandum of Law and documentation in support of their claim that they transferred 100 ETH tokens to the defendant as alleged in the Complaint.  (See ECF No. 9).  Plaintiffs then submitted a Memorandum of Law, as well as two supporting exhibits on November 17, 2021.  (See Mem.;[4] Trans. Rec.;[5] Facebook Mess.[6]).

DISCUSSION

## I.      Default and Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  The Clerk of the Court entered a default against defendant on April 12, 2021.  (See ECF No. 7).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

---

[4] Citations to "Mem." refer to plaintiffs' Memorandum in Support of their First Motion for Default Judgment, filed Nov. 17, 2021, ECF No. 10.

[5] Citations to "Trans. Rec." refer to Exhibit A to plaintiffs' Memorandum in Support setting forth the "Blockchain transaction record for transfer of Plaintiffs' 100 ETH tokens to Defendant," filed Nov. 17, 2021, ECF No. 10-1.

[6] Citations to "Facebook Mess." refer to Exhibit B to plaintiffs' Memorandum in Support setting forth an "Excerpt of Plaintiff White's correspondence with Defendant" regarding the transaction, filed Nov. 17, 2021, ECF No. 10-2.

While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

A party defaults when it "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'"  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011). Indeed, a defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial," Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, or by failing to comply with discovery orders or failing to appear for trial.  Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-19 (3d Cir. 1992)). However, the "typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 129 (alterations and quotations omitted).

A.  Personal Jurisdiction

As a threshold matter, "[i]t is well-established that a default judgment entered by a court that lacks personal jurisdiction over the parties is void" and could later be vacated.  IdeaVillage Prod. Corp. v. A1559749699-1, No. 20 CV 04679, 2022 WL 204214, at *2 (S.D.N.Y. Jan. 24, 2022); Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 699 (S.D.N.Y. 2021) (noting that a court is "powerless to proceed to an adjudication" absent personal jurisdiction (internal quotations and citations omitted)); see also Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *9 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).  The Second Circuit has stated that "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 133 (quoting Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207,

213 (2d Cir. 2010)); see Aime Leon Dore, Inc. v. TASTR. GmbH, No. 20 CV 934, 2021 WL 6797294, at *4 (E.D.N.Y. Jan. 8, 2021) (noting that "courts have discretion to sua sponte consider whether there is personal jurisdiction against a defendant in an action for default judgment"). However, the Mickalis court also noted that a district court is not required to "investigate its personal jurisdiction" before entering a default judgment. City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 133.

A defendant may waive personal jurisdiction, but such a waiver requires some act that "amount[s] to a legal submission to the jurisdiction of the court, whether voluntary or not." Id. at 134 (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704-05 (1982)). This includes where a defendant fails to raise the defense in its initial responsive pleading, raises the defense but later fails to actively litigate the defense, or raises and litigates the defense but later withdraws from the action. Id. at 134-36.

Defendant Le has not appeared in the action and therefore has not acted in any way that indicates he has submitted to the jurisdiction of the Court. See DISH Network L.L.C. v. Kaczmarek, No. 19 CV 4803, 2021 WL 4483470, at *4 (E.D.N.Y. June 24, 2021) (holding that defendant did not waive personal jurisdiction where he sought an extension of time to answer but did not thereafter file an answer), report and recommendation adopted as modified 2021 WL 4485870 (E.D.N.Y. Sept. 30, 2021); Hood v. Ascent Med. Corp., No. 13 CV 0628, 2016 WL 1366920, at *6 (S.D.N.Y. Mar. 3, 2016) (noting that "a defendant who defaults by failing to answer does not waive any challenge to personal jurisdiction"), report and recommendation adopted, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), aff'd, 691 F. App'x 8 (2d Cir. 2017); Cadlerock Joint Venture, L.P. v. Kierstedt, 119 A.D.3d 627, 628, 990 N.Y.S.2d 522, 524 (2014) (holding that "where the defendant's only participation in the action is the submission of a

7

motion to vacate a default judgment for lack of personal jurisdiction, the defense of lack of personal jurisdiction is not waived").  Thus, defendant Le has not waived personal jurisdiction and, although this Court is not required to assure itself of its personal jurisdiction over defendant Le, it will do so in this case.

For a court to exercise personal jurisdiction over a defendant, three elements must be satisfied: (1) the defendant must be properly served, (2) there must be "a statutory basis for personal jurisdiction," and (3) the exercise of personal jurisdiction must be "consistent with constitutional due process principles."  Cohen v. Facebook, Inc., 252 F. Supp. 3d 140, 151 (E.D.N.Y. 2017), aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc., 934 F.3d 53 (2d Cir. 2019).

Serving a defendant, as plaintiffs did in this case, can establish personal jurisdiction if the defendant is subject to personal jurisdiction in the state in which the federal court sits.  Fed. R. Civ. P. 4(k)(1).  In New York, personal jurisdiction can be established in two ways.  Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).  First, a non-domiciliary is subject to general personal jurisdiction under New York's Civil Practice Law and Rules ("C.P.L.R.") Section 301 if he or she "is 'doing business' in the state."  Reich v. Lopez, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014) (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)), aff'd, 858 F.3d 55 (2d Cir. 2017).  The test for establishing general jurisdiction is fairly stringent and "requires continuous, permanent, and substantial activity in New York."  Doe v. National Conf. of Bar Examiners, No. 16 CV 264, 2017 WL 74715, at *5 (E.D.N.Y. Jan. 6, 2017) (quotation omitted).  Further, in order to comport with due process for general jurisdiction, a defendant "must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction."  Reich v. Lopez, 38 F. Supp. 3d at 454; see also

Doe v. National Conf. of Bar Examiners, 2017 WL 74715, at *5 (noting that "the paradigm forum for the exercise of general jurisdiction is [a defendant's] domicile" (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014))).  Clearly, defendant Le is not domiciled in New York; plaintiffs allege that he resides in Springfield, Virginia.  (Compl. ¶ 2).  Further, according to plaintiffs, he was served at his home in Springfield, Virginia, and there is no evidence that defendant consented to this Court's jurisdiction.  (See ECF No. 5).  Therefore, based on the evidence before the Court, plaintiffs have not demonstrated that defendant is subject to general personal jurisdiction in this Court and it would therefore be improper for this Court to exercise general personal jurisdiction over defendant.

Specific personal jurisdiction, on the other hand, is "based on a connection between the defendant's alleged misconduct and the forum state." Kejriwal v. UCO Bank, No. 12 CV 7507, 2014 WL 116218, at *5 (S.D.N.Y. Jan. 10, 2014).  In other words, there must be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (citations and alterations omitted).  A non-domiciliary is subject to specific personal jurisdiction if he or she "transacts any business within the state," N.Y. C.P.L.R. § 302(a)(1), "commits a tortious act within the state, except as to a cause of action for defamation," id. § 302(a)(2), or "commits a tortious act without the state . . . if he: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Id. § 302(a)(3). The defendant must "purposefully avail[]

himself of the privilege of conducting activities within New York" and "the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." <u>Grand River Ent. Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 166 (2d Cir. 2005) (alterations and citations omitted); <u>see Berdeaux v. OneCoin Ltd.</u>, No. 19 CV 4074, 2021 WL 4267693, at *9 (S.D.N.Y. Sept. 20, 2021) (stating that the "overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York").  Additionally, "where there is a showing that business was transacted, there must be a substantial nexus between the business and the cause of action." <u>Grand River Ent. Six Nations, Ltd. v. Pryor</u>, 425 F.3d at 166.

Here, it is difficult to see how the transaction between plaintiffs and defendant bears a substantial nexus to the state of New York.  Plaintiffs allege that they contacted defendant so that defendant could arrange a transaction whereby plaintiffs would receive KDA from Kadena, a Brooklyn-based company.  (Compl. ¶¶ 1, 6, 9).  However, the transaction between plaintiffs and defendant that is the subject of this suit never actually involved Kadena—in fact, plaintiffs' arguments regarding conversion and unjust enrichment rest on the fact that defendant never consummated the transaction with Kadena, but presumably kept the ETH tokens for himself.  (See <u>id.</u> ¶¶ 18-20).  Instead, plaintiffs transferred their ETH to defendant, a resident of Virginia, and communicated with defendant through plaintiff White, a resident of California.  (See <u>id.</u> ¶¶ 2-3, 6; Facebook Mess. (setting forth alleged conversation between plaintiff White and defendant)).  Additionally, although plaintiffs provide a screenshot that allegedly illustrates the transaction (see Trans. Rec.), the screenshot portion of the webpage does not indicate where the

transaction took place.[7]  Although it appears that 50 of the 100 tokens came from plaintiff Shi, who is domiciled in New York (see ¶¶ 3, 10), courts have found that there is an insufficient basis for personal jurisdiction even where the transaction resulted in payment to a New York bank account.  See MDG Real Est. Glob. Ltd. v. Berkshire Place Assocs., LP, 513 F. Supp. 3d 301, 307 (E.D.N.Y. 2021) (collecting cases).  Beyond the conversations between Kadena and defendant and Kadena and plaintiff, there is no basis for asserting that defendant transacted business within the state of New York and these conversations are insufficient for purposes of asserting personal jurisdiction.  See Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 377-79, 23 N.E.3d 988, 994-95 (2014) (finding no jurisdiction even where several conversations between the parties and plaintiff initiated the contacts with defendant).

Further, even though plaintiff Shi is a resident of New York, the fact that *plaintiffs* initially contacted defendant weighs against exercising personal jurisdiction to the extent that it indicates that defendant did not purposefully "avail[] [himself] of the privilege of conducting activities within New York."  Id. at 377, 23 N.E.3d at 993 (noting that plaintiff "sought out and initiated contact with defendants" when discussing personal jurisdiction); see Mason v. Antioch Univ., No. 15 CV 5841, 2016 WL 2636257, at *8 (E.D.N.Y. May 5, 2016) (same); cf. Eades v. Kennedy, PC L. Offs., 799 F.3d 161, 168 (2d Cir. 2015) (finding that personal jurisdiction existed in debt collection case where defendant "initiated" contact with the plaintiffs rather than engaged in responsive attempts).

Even if plaintiff attempts to establish personal jurisdiction by alleging that defendant committed a tortious act—conversion—in New York, the case law establishes that "the suffering

---

[7] The Court notes that it is unable to access the web address that purportedly lists the transaction, so while it may list the transaction location, as well as the location of the accounts associated with the transaction, the Court cannot verify that one way or the other.

of economic damages in New York is insufficient, alone, to establish a direct injury in New York

for N.Y. C.P.L.R. § 302(a)(3)." AVRA Surgical Robotics, Inc. v. Gombert, 41 F. Supp. 3d 350,

361 (S.D.N.Y. 2014) (quoting Troma Entertainment, Inc. v. Centennial Pictures Inc., 729 F.3d

215 (2d Cir. 2013)).  Here, the alleged injury is economic in nature; plaintiffs have been deprived

of the value of their 100 ETH tokens.  The Court therefore finds that it lacks personal jurisdiction

over defendant Le.

   B.  Liability for Unjust Enrichment

      Even assuming plaintiffs were able to establish that the Court has personal jurisdiction

over defendant Le, the Court is "required to determine whether [plaintiffs'] allegations establish

[defendant's] liability as a matter of law" when deciding whether to grant plaintiffs' default

judgment motion.  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); see Board of

Managers of Two Columbus Ave. v. Leschins, 72 Misc. 3d 1207(A), 148 N.Y.S.3d 681 (N.Y.

Sup. Ct. 2021) (denying default judgment on unjust enrichment claim where plaintiff failed to

establish elements of claim).

      To establish a claim for unjust enrichment, plaintiffs must allege that: "(1) defendant

benefitted; (2) at plaintiff[s'] expense; and (3) equity and good conscience require that restitution

be granted to the plaintiff[s]."  Miller's Launch, Inc. v. Optical Commc'ns Grp., Inc., No. 12 CV

1047, 2013 WL 782869, at *3 (E.D.N.Y. Feb. 8, 2013) (citing Kaye v. Grossman, 202 F.3d 611,

616 (2d Cir. 2000) and Golden Pacific Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001)),

report and recommendation adopted, 2013 WL 783134 (E.D.N.Y. Mar. 1, 2013).  "The benefit to

the defendant is not limited to monies, and can be either direct or indirect."  State Farm Mut.

Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010).

In Lagemann v. Spence, the plaintiffs transferred cryptocurrency "valued at approximately $3,000,000" to the defendants in order to invest in defendants' fund.  No. 18 CV 12218, 2020 WL 5754800, at *10 (S.D.N.Y. May 18, 2020), report and recommendation adopted, 2020 WL 7384009 (S.D.N.Y. Dec. 16, 2020).  The court granted summary judgment to plaintiffs on their unjust enrichment claim, stating that the plaintiffs had transferred $3,000,000 in cryptocurrency to defendant, defendant had "misappropriated those assets" by paying himself fees and commissions that were not previously discussed by the parties, and that it would be "unconscionable and against fundamental principles of justice, equity, and good conscience" for defendant to retain the "benefits he . . . received as a result of his misconduct."  Id.  Here, plaintiffs claim that they transferred their ETH tokens to defendant, allegedly valued at a total of approximately $177,950 at the time the Complaint was filed on March 15, 2021, and valued at $477,000 as of November 15, 2021.  (Mem. at 4).  Instead of using the tokens to purchase KDA, defendant retained those tokens even after plaintiffs requested that he return them.  (See Compl. ¶¶ 19-20).  Regardless of what value is used for the ETH tokens, it would be inequitable for defendant to be allowed to retain the tokens.  To do so would allow defendant to benefit at plaintiffs' expense.  Such allegations are therefore sufficient to state a claim for unjust enrichment.  See also Meta-Tech Consultants, LLC v. Niu, No. 19 CV 2243, 2021 WL 5043981, at *2 (D. Nev. Oct. 29, 2021) (finding plaintiff's claim for unjust enrichment meritorious and granting default judgment where plaintiff paid defendant to purchase cryptocurrency on plaintiff's behalf, but defendant later refused to provide the cryptocurrency to plaintiff after he procured it and applying a standard of unjust enrichment similar to New York law).

C.  Liability for Conversion

Plaintiffs have also alleged a claim against defendant for conversion.  To establish a

claim for conversion, a plaintiff must show that "someone, intentionally and without authority,

assume[d] or exercise[d] control over personal property belonging to someone else, interfering

with that person's right of possession."  Pure Power Boot Camp, Inc. v. Warrior Fitness Boot

Camp, LLC, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) (internal quotation and citation omitted).

This includes a "wrongful taking, [] detention, [] or disposal."  Id.  "[W]here the original

possession is lawful, a conversion does not occur until the defendant refuses to return the

property after demand or until he sooner disposes of the property."  Coughlan v. Jachney, 473 F.

Supp. 3d 166, 200 (E.D.N.Y. 2020) (citation and quotation omitted).  Cryptocurrency is

considered personal property and courts have found that it may be the subject of a conversion

suit.  See Lagemann v. Spence, 2020 WL 5754800, at *10 n.11 (stating that allowing a cause of

action for conversion as to cryptocurrency is consistent with other conversion cases and

collecting cases); see also Meta-Tech Consultants, LLC v. Niu, 2021 WL 5043981, at *2.

Here, the plaintiffs have alleged that defendant retained their ETH tokens after plaintiffs

requested that the tokens be returned.  (Compl. ¶ 20).  In Lagemann v. Spence, the court found

that, where the plaintiffs alleged that they "transferred cryptocurrency to" the defendant and the

defendant "kept all or a portion" of plaintiffs' cryptocurrency, the plaintiffs were entitled to

judgment against defendant on their claim of conversion.  2020 WL 5754800, at *10.  The court

noted that by "refusing to return to Plaintiffs their assets, [defendant] has interfered with

Plaintiffs' ownership interest in those holdings and has deprived Plaintiffs of their property."  Id.

Again, defendant Le allegedly kept plaintiffs' tokens even after plaintiffs requested their return.

Further, according to the Complaint, defendant was to have used the tokens to purchase KDA,

which he did not do.  (Compl. ¶¶ 7-10).  A similar scenario was present in <u>Lagemann</u>, where the court considered the fact that the plaintiffs "did not authorize [defendant] to use their funds in the way that he did"; they authorized defendant to use their cryptocurrency as an investment in defendant's fund, but instead defendant awarded himself commissions, fees, and "cover[ed] his own business expenses."  2020 WL 5754800, at *10.  Here, plaintiffs authorized defendant Le to use their tokens to purchase KDA, but when he failed to do so, his "use," or lack thereof, was unauthorized.  Therefore, plaintiffs have adequately alleged a claim for conversion.

D.  <u>Damages</u>

Even where plaintiffs have adequately alleged liability, they must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  <u>Levesque v. Kelly Commc'ns, Inc.</u>, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  <u>Fustok v. Conticommodity Servs., Inc.</u>, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), <u>aff'd</u>, 873 F.2d 38 (2d Cir. 1989).

Here, plaintiffs have stated that they seek "injunctive relief in the form of 100 ETH tokens or in the alternative compensatory damages in the amount of the present value of 100 ETH tokens." (Mem. at 8). However, plaintiffs have provided no evidence to support their request for damages in this case beyond stating various values of ETH over time in their Memorandum of Law and citing to a website that this Court is unable to access. (See Mem. at 4, n.1). In fact, plaintiffs have given no indication of what value of ETH this Court should use to calculate damages. Plaintiffs have not provided any affidavits, apart from that of their attorney, which would verify that they provided ETH to defendant Le valued at a certain amount, nor have they provided any other supporting documentation that would allow the Court to determine how to value the ETH at any point in time. See Lagemann v. Spence, 2020 WL 5754800, at *4 (describing the declarations of the individual plaintiffs submitted in support of their motion for default judgment); United States Dist. Ct. Rules S. & E.D.N.Y., Civ R. 7.1(a)(3) (requiring "supporting affidavits and exhibits thereto containing any factual information . . . necessary for the decision of the motion"), available at: https://www.nyed.uscourts.gov/content/local-rules-effective-october-15-2021.[8]

Plaintiffs did provide a screenshot of a website, Blockchain.com, which they rely on to argue that "[a]t the time of this transaction, 100[] ETH was sent with a value of $39,896.18" and the "current value of this transaction is now $472,826.00." (See Trans. Rec.). However, apart from the screenshot, which does not indicate the names of either the plaintiffs or the defendant and states only that the transaction occurred on March 31, 2018, plaintiffs have not provided any

---

[8] The Court noted the dearth of affidavits on November 5, 2021, stating that plaintiffs failed to provide "any documentation whatsoever in support of their claim that they transferred 100 ETH tokens to the defendant." (See ECF No. 9). The Court gave plaintiffs an additional two weeks to supplement their motion with the supporting information. (Id.) Unfortunately, even after having been given an opportunity to supplement their papers, the information provided to the Court is still insufficient for the Court to determine damages.

explanation as to what is reflected in the screenshot, nor have they verified that it in fact reflects the transaction at issue.  Apart from the absence of any explanation that would allow the Court to consider this screenshot as relevant in any way, plaintiffs also contradict the information in the screenshot by stating in their Memorandum of Law that the value of the ETH tokens at the time of the "Contemplated Investment was $41,629.00."  (Mem. at 4 (citing Compl. ¶ 19)).  Further, although plaintiffs provide a screenshot of Facebook messages between two individuals that appear to reference the transaction at issue, the messages themselves do not indicate the names of either plaintiff White nor defendant Le, although the caption, added by plaintiffs, that accompanies the screenshots states that the messages are between those two individuals.  (See Facebook Mess.).  Additionally, the messages appear to reference a transaction generally, stating that one of the individuals "[e]nded up sending [the ETH] tonight" and attaching a link to a transaction—which this Court notes is a different web address than the transaction screenshot— but the screenshot cuts off the date that the message was sent, making it impossible for this Court to say that the message was sent on the same day that the alleged transaction occurred. (Compare Trans. Rec. with Facebook Mess.).

Plaintiffs also did not provide any other calculation of damages beyond alleging in the Complaint that the value of the tokens was $1,779.50 each at the date of the filing of the Complaint.  (Compl. ¶ 19).  They have not provided any information to support their claim that the value of the ETH tokens had risen from $41,629.00 at the time of the transaction to $177,950 at the time of the filing of the Complaint.  Additionally, they now request "compensatory damages in the amount of the present value of 100 ETH tokens."  (Mem. at 8).  Again, however, they have not provided any support that would allow the Court to determine what the present value of these tokens are today.

Plaintiffs cannot "engage in post hoc cherry-picking" of the value of their ETH tokens. Meta-Tech Consultants, LLC v. Niu, 2021 WL 5043981, at *3. In other cases where the court found for the plaintiffs on their conversion and unjust enrichment claims, the court has looked to the value of the assets at the time of investment, see Lagemann v. Spence, 2020 WL 5754800, at *13, or the value of the assets at the time of the complaint. See Meta-Tech Consultants, LLC v. Niu, 2021 WL 5043981, at *3; see also Palomo v. DeMaio, 403 F. Supp. 3d 42, 62 (N.D.N.Y. 2019) (citation and quotation omitted) (noting that "[u]nder New York law, damages for conversion are usually the value of the property at the time of conversion."). Since plaintiffs have failed to provide any support for their claimed valuation of these tokens at any specific point in time and have been inconsistent in their request for damages, the Court finds that it is unable to calculate plaintiffs' damages and respectfully recommends that plaintiffs' motion for damages be denied at this time. See Global Commodities, Inc. v. Dayax, LLC, No. 18 CV 5225, 2022 WL 431426, at *1 (E.D.N.Y. Jan. 13, 2022) (noting that, previously, plaintiff's motion for default was previously granted but plaintiff's motion for damages was denied because plaintiff "did not properly support the request for damages"), report and recommendation adopted, 2022 WL 426182 (E.D.N.Y. Feb. 11, 2022).

Although plaintiffs state that they seek, in the alternative, injunctive relief, it appears that what they truly seek is replevin, or the return of their 100 ETH tokens. As an initial matter, conversion is "a legal claim, not an equitable claim," and therefore damages, rather than injunctive relief is available. Symphony FS Ltd. v. Thompson, No. 18 CV 3904, 2018 WL 6715894, at *9 (E.D. Pa. Dec. 20, 2018); see Palomo v. DeMaio, 403 F. Supp. 3d at 61 (stating that a "claim for 'conversion of personal property' seeks damages and is 'unmistakably an action at law'" (citation and alterations omitted)). Similarly, "[c]laims for unjust enrichment where an

award of money would fairly compensate the party bringing the claim are considered legal in nature." Friedman v. Wahrsager, 848 F. Supp. 2d 278, 295 (E.D.N.Y. 2012) (quotations and citations omitted). Clearly, here, an award of money would fairly compensate plaintiffs for their transfer.

By contrast, replevin is a separate, equitable claim, which plaintiff did not plead. See Palomo v. DeMaio, 403 F. Supp. 3d at 61 (describing replevin as an equitable, separate, claim); Nissan Motor Acceptance Corp. v. Scialpi, 94 A.D.3d 1067, 1068, 944 N.Y.S.2d 160, 162 (2d Dep't 2012) (discussing replevin and conversion as two separate claims). Although plaintiffs requested an injunction as part of their relief (see Compl. at 9), plaintiffs did not allege replevin as a cause of action in the Complaint. Further, each of the cases plaintiffs cite in support of their request for replevin as part of the default judgment motion treat it as a separate cause of action. See Palomo v. DeMaio, 403 F. Supp. 3d at 55 (discussing "conversion and replevin claims"); Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 455 (S.D.N.Y. 2014) (discussing replevin and conversion separately); Satterwhite v. Harriman Nat. Bank & Tr. Co. of City of New York, 13 F. Supp. 493, 502 (S.D.N.Y. 1935) (distinguishing between "conversion case[s]" and "replevin action[s]"). Since the Court finds that plaintiffs have not adequately alleged replevin as a cause of action, the Court declines to recommend the injunctive relief requested by plaintiffs—namely, the return of plaintiffs' tokens. Spain v. Kinder Stuff 2010 LLC, No. 14 CV 2058, 2015 WL 5772190, at *6 (E.D.N.Y. Sept. 29, 2015) (denying default judgment where plaintiff did not plead specified claim in the complaint); cf. See Fed. R. Civ. P. 54(c) (stating that a default judgment "must not differ in kind" from that sought in the pleadings).

Accordingly, since plaintiffs did not provide a sufficient basis for this Court to determine plaintiffs' damages, the Court respectfully recommends that plaintiffs' motion for damages and injunctive relief be denied without prejudice.

CONCLUSION

It is respectfully recommended that plaintiffs' motion for default judgment be denied in its entirety based on plaintiffs' failure to demonstrate that the court has personal jurisdiction over the defendant.  In the alternative, it is respectfully recommended that the court grant default judgment but deny plaintiffs' request for damages and injunctive relief, without prejudice.

Plaintiffs are Ordered to serve a copy of this Report and Recommendation on defendant and file proof of service on the docket by March 6, 2022.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: March 2, 2022
        Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York