UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
JOHN SHI and KEVIN WHITE, : 21-CV-1361 (ARR) (CLP)
:
          *Plaintiffs*, : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
   -against- :
:
DON LE, : **OPINION & ORDER**
:
          *Defendant*. :
X
--------------------------------------------------------------------

ROSS, United States District Judge:

      Pending before me are the objections of plaintiffs John Shi and Kevin White to a Report and Recommendation entered by Magistrate Judge Cheryl L. Pollak. For the reasons set forth below, the objections are overruled.

## BACKGROUND

      Plaintiffs allege that on March 30, 2018, they transferred 100 ether tokens[1]—50 from each plaintiff—to defendant Don Le after defendant represented that he would use the ether tokens to invest in tokens issued by Kadena LLC, a blockchain technology company based in Brooklyn, New York. Compl. ¶¶ 1, 10, ECF No. 1. Defendant confirmed that he received the ether tokens on March 30 and responded to a follow-up email from plaintiffs on April 3, 2018. *Id.* ¶¶ 10–11. Following the April 3 email, defendant stopped communicating with plaintiffs, ignoring their multiple attempts to "make contact with [him] in order to confirm [their investment], or, alternatively, to demand that [he] return their [ether] tokens." *Id.* ¶ 12. To this date, plaintiffs do

---

[1] As plaintiffs explain, ether tokens are the popular form of cryptocurrency associated with the Ethereum blockchain. Compl. ¶ 1 n.2.

1

not know if defendant "ever purchased any [Kadena] tokens using [their] funds" and defendant has not returned their 100 ether tokens. *Id.* ¶¶ 1, 18.

On March 15, 2021, plaintiffs filed the present suit against defendant, alleging unjust enrichment and conversion. *Id.* ¶¶ 21–30. The same day, service was effectuated on defendant's "Father [and] Co-Resident" at an address in Hibbling, Virginia. Summons Returned Executed, ECF No. 5. On April 6, 2021, after defendant failed to appear in the case, plaintiffs requested a certificate of default, which the Clerk of Court granted. Req. for Certificate of Default, ECF No. 6; Clerk's Entry of Default, ECF No. 7. Plaintiffs then moved for default judgement, and I referred their motion to Magistrate Judge Pollak. First Mot. for Default J., ECF No. 8; Order, Apr. 12, 2021.

Magistrate Judge Pollak issued her Report and Recommendation on March 2, 2022. *See* Report and Recommendation ("R. & R."), ECF No. 11. In it, she recommends first that I deny plaintiffs' motion "in its entirety based on plaintiffs' failure to demonstrate that the court has personal jurisdiction over the defendant." *Id.* at 20; *see also id.* at 6–12. In the alternative, she recommends that I grant the motion for default judgment but deny without prejudice plaintiffs' request for damages and injunctive relief. *Id.* at 20; *see also id.* at 12–20. Plaintiffs object to both of Magistrate Judge Pollak's recommendations. *See* Obj. to R. & R. ("Obj."), ECF No. 13. Defendant had until March 23, 2022, to respond to plaintiffs' objections but has not done so.

## LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific and timely objections to a magistrate judge's conclusions, the court reviews de novo those portions of the report and recommendation to which objection is made. *Id.*; Fed. R. Civ. P.

2

72(b)(3). The court may adopt any unobjected-to parts of the report and recommendation, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

## DISCUSSION

### I. This Court Does Not Have Personal Jurisdiction over Defendant.

Plaintiffs' first objection is to Magistrate Judge Pollak's determination that there is no personal jurisdiction over defendant in this action. "There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014). Magistrate Judge Pollak found that defendant, who is a resident of Virginia, Compl. ¶ 2, is not subject to general jurisdiction, which permits a court to exercise jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum, *Sonera*, 750 F.3d at 225, and plaintiffs do not object to that conclusion. Instead, they argue that defendant is subject to specific jurisdiction, which "requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 334 (E.D.N.Y. 2021). To satisfy the requirements of specific jurisdiction, plaintiffs must demonstrate that defendant is subject to New York's long-arm statute and that jurisdiction comports with federal due process. *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 45 (2d Cir. 2016) (summary order).

Here, the relevant provision of New York's long-arm statute is § 302(a)(1), which permits courts to exercise specific jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1); *see also* Obj. 3–9 (arguing that § 302(a)(1) confers jurisdiction

3

in this case).² Courts in this circuit have explained that § 302(a)(1) "has two prongs: (1) the defendant must have transacted business within the state, either itself or through an agent, and (2) the cause of action must arise from that business activity." *Grp. One*, 523 F. Supp. 3d at 335 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)). The first prong requires courts to look to "the totality of the defendant's activities within the forum" and determine whether the defendant has "purposefully avail[ed] [him]self of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citations and quotation marks omitted). To satisfy the second prong, meanwhile, "a plaintiff must show that there is a 'substantial relationship' or 'articulable nexus' between the claim asserted and the actions taken in New York." *Grp. One*, 523 F. Supp. 3d at 336 (quoting *Best Van Lines*, 490 F.3d at 246).

Plaintiffs make two arguments that defendant had contacts with New York that meet the requirements of § 302(a)(1). First, they explain that, though defendant apparently never transferred plaintiffs' ether tokens to Kadena, defendant transacted business with Kadena outside of his dealings with plaintiffs by separately "enter[ing] into a formal . . . agreement with Kadena to purchase an interest in yet-to-be-issued [Kadena] tokens." Obj. 6. According to plaintiffs, this agreement with Kadena, which is based in Brooklyn, subjects defendant to personal jurisdiction in New York. *Id.* 6–7. But even assuming there is a "substantial relationship" between the Kadena

---

² Plaintiffs also make reference to § 302(a)(2), which allows for jurisdiction when a defendant "commits a tortious act within the state," N.Y. C.P.L.R. § 302(a)(2), but they do not develop any arguments regarding this section. In any event, § 302(a)(2) is inapplicable here, as there is no allegation that defendant was physically present in New York for the acts at issue. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) ("[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803–04 (S.D.N.Y. 2015) (noting that "the Second Circuit continues to adhere to [this] traditional, stricter rule"), *aff'd*, 660 F. App'x 43.

agreement and defendant's business with plaintiffs, this agreement cannot form the basis for personal jurisdiction here. Courts in this circuit have consistently found that "[j]urisdiction over a corporation or charity's board member, officer or employee, who is sued in his individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his official capacity." *In re Terrorists Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 506 (S.D.N.Y. 2010), *vacated and remanded in part on other grounds*, 714 F.3d 109 (2d Cir. 2013); *see also Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) ("If an individual is sued in his individual capacity, but only had contact with New York as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction in New York."); *FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, 19-cv-10497 (JMF), 2021 WL 37709, at *9 (S.D.N.Y. 2021) (same and collecting cases); *cf. Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008) ("[A]n individual defendant may be subject to specific personal jurisdiction (but not general jurisdiction) based on his actions in his corporate capacity only where the plaintiff can show that the corporation was acting as the agent of the officer."). According to the Complaint, defendant entered the agreement with Kadena not on his own behalf, but "as the representative of ChainRock," a research and investment firm he founded and served as a partner of. Compl. ¶¶ 2, 14–15.[3] Thus, any contact defendant had with New York through Kadena was solely on behalf of

---

[3] The Complaint does also allege that defendant told both plaintiffs and another partner at ChainRock that he would be investing or had invested in Kadena on his own behalf. *See* Compl. ¶¶ 7, 13. But plaintiffs' argument in support of personal jurisdiction does not rest on the representations defendant made about personally investing in Kadena; rather, plaintiffs claim that jurisdiction is proper because of the "consummated" Kadena agreement. *See* Obj. 6 (noting that "defendant appears to have entered into a formal . . . agreement with Kadena to purchase an interest in yet-to-be-issued [Kadena] tokens" and arguing for personal jurisdiction based the "nexus" between this agreement and plaintiffs' claims). The only consummated agreement plaintiffs refer to is repeatedly identified in the Complaint as "an investment made by ChainRock" and

ChainRock. Plaintiffs' claims, meanwhile, are against defendant personally and based on acts performed in his individual capacity. Because the Kadena agreement did not give rise to any "personal contacts" with New York by defendant, I do not consider it as a basis for personal jurisdiction.

Plaintiffs' second argument is that "even outside of [defendant's] business dealings with Kadena, [p]laintiffs have adequately pled a direct nexus between their claims and [defendant's] contacts with New York in the form of [defendant's] dealings with [p]laintiffs themselves." Obj. 7. Specifically, they point to plaintiff Shi, who is a New York resident, Compl. ¶ 3, and who transferred his fifty ether tokens to defendant "from within the State of New York." *Id.* 7–9.[4] According to plaintiffs, this transfer of tokens from a New York resident establishes personal jurisdiction under § 302(a)(1). *Id.* For jurisdiction here to be proper, however, defendant must have purposefully "avail[ed] [him]self of the privilege of conducting activities within New York"— "random, fortuitous, or attenuated contacts" with the state are not enough. *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 357–58 (S.D.N.Y. 2009) (first quoting *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007), then quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Though Mr. Shi was in New York when he sent the ether tokens to defendant, this fact presents nothing more than a "random" or "fortuitous" contact with New York—Mr. Shi could just as easily have made the transfer from any other state,[5] and there is no

---

"ChainRock's [agreement]." *See id.* ¶¶ 14–15.

[4] Though both plaintiffs transferred tokens, plaintiff White, a California resident, was the one who communicated with defendant and negotiated the agreement. Compl. ¶¶ 3, 6.

[5] As plaintiffs point out, "'ownership' of [ether] tokens solely exists in reference to the decentralized ledger of the Ethereum network, which is hosted in a permissionless manner in 'nodes' all over the world." Obj. 8.

6

indication that defendant entered his agreement with Mr. Shi because of Mr. Shi's connection to New York. *Cf. Dardana Ltd. v. A.O. Yuganskneftegaz*, No. 00-cv-4633 (DAB), 2001 WL 1131987, at *3 (S.D.N.Y. Sept. 24, 2001), *vacated on other grounds by Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202 (2d Cir. 2003) ("[F]inancial activity in a forum which is unrelated to any systematic business conducted in that forum is generally insufficient for jurisdictional purposes."). Without additional allegations that *defendant* purposefully availed himself of the privilege of conducting business in New York or under New York law, Mr. Shi's presence and conduct in the state during the period at issue does not establish personal jurisdiction. *Cf. Zibiz Corp. v. FCN Tech. Sols.*, 777 F. Supp. 2d 408, 418 (E.D.N.Y. 2011) ("[T]he mere fact that a defendant purchases good[s] or services from New York does not mean that it is doing business here." (citation and quotation marks omitted)); *Nixon v. Inquisitr Ltd.*, 20-cv-1819 (JS), 2021 WL 3667154, at *5 (E.D.N.Y. Aug. 17, 2021) (same); *MDG Real Est. Glob. Ltd. v. Berkshire Place Assocs.*, 513 F. Supp. 3d 301, 307 (E.D.N.Y. 2021) (explaining that "mere payment into a New York bank account does not alone provide a basis for New York jurisdiction" and collecting cases (citation omitted)); *Hart v. Tri-State Consumer, Inc.*, 21-cv-1738 (VEC), 2021 WL 5180923, at *4 (S.D.N.Y. Nov. 6, 2021) ("[C]ommunications with and payments to a New York resident, by themselves, are generally insufficient to establish personal jurisdiction.").

Neither of plaintiffs' arguments establishes that defendants' contacts with New York give rise to personal jurisdiction. I therefore overrule their objections and adopt Magistrate Judge Pollak's recommendation that their motion for default judgment be denied.

### II. I Do Not Reach the Issue of Whether I Should Deny Plaintiffs' Motion for Damages and Injunctive Relief.

Plaintiffs also object to Magistrate Judge Pollak's alternative recommendation that I grant their motion for default judgment but deny their request for damages and injunctive relief. Having

adopted Magistrate Judge Pollak's primary recommendation that the motion for default judgment be denied, I do not address plaintiffs' additional arguments.

## CONCLUSION

Because plaintiffs have failed to establish that this court has jurisdiction over defendant, I adopt Magistrate Judge Pollak's recommendation and deny their motion for default judgment. I also order that this action be dismissed without prejudice for want of personal jurisdiction. *Cf. Bersoum v. Abotaeta*, 16-cv-987 (LGS), 2017 WL 3446819, at *5 (S.D.N.Y. Aug. 10, 2017) (denying the plaintiffs' motion for default judgment for lack of personal jurisdiction and dismissing the case for the same reason); *see also Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp*, 619 F.3d 207, 213–14 (2d Cir. 2010) (affirming the district court's sua sponte dismissal of a case for lack of personal jurisdiction after the district court gave the plaintiff an opportunity to establish the court's jurisdiction over the non-appearing defendants). The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　Allyne R. Ross
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　March 28, 2022
　　　　　　Brooklyn, New York